JUDGE CARTER

12 CIV 7698

Ira G. Greenberg
Zachary W. Silverman
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, NY 10022
212.308.4411
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------- X

PATRICK SCOTT BAKER, et al.

              Petitioners,

    -versus-

NATIONAL BANK OF EGYPT; JPMORGAN
CHASE & CO.; CITIBANK, N.A.; THE
BANK OF NEW YORK MELLON; INTESA
SANPAOLO SPA; and COMMERZBANK
AG,

              Respondents.

------------------------------------- X

No. ____-cv-_____

**PETITION FOR TURNOVER
PURSUANT TO FED. R. CIV P. 69
AND N.Y. C.P.L.R. §§ 5225 AND 5227**

      Petitioners Patrick Scott Baker; Jerry Baker; Lois Baker; Craig Baker, individually and as

the personal representative of the Estate of David Baker; Stacie Baker; Patricia A. Henry,

individually and as the substitute executrix and successor in interest of the Estate of Scarlett

Rogencamp, and as the executrix of the Estate of Hetty E. Peterson; Valerie Peterson, as

executor of the Estate of Vernon W. Peterson; Katharine D. Doris; Paul G. Peterson; Michelle Y.

Holbrook; Jackie Nink Pflug; Rylma Nink; Eugene Nink; Gloria Nink; Mary Nink; and Scott

Pflug (collectively the "Baker Petitioners"), by their undersigned counsel and for their petition in

this proceeding, allege as follow:

## NATURE OF THE PROCEEDING

1.     The Baker Petitioners seek an order pursuant to Fed. R. Civ. P. 69(a) and N.Y. C.P.L.R. §§ 5225 and 5227 directing respondents National Bank of Egypt; JPMorgan Chase & Co.; Citibank, N.A.; The Bank of New York Mellon; Intesa Sanpaolo SPA; and Commerzbank AG (collectively, the "Respondent Banks") to turn over certain assets payable to or held for the benefit of defendants Syrian Arab Republic, Syrian Air Force Intelligence, or General Muhammed Al-Khuli (collectively, the "Syria Judgment Debtors").

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction in this proceeding pursuant to 28 U.S.C. § 1331, as a civil action arising under 28 U.S.C. §§ 1602-11 and § 201 of the Terrorism Risk Insurance Act ("TRIA"), and ancillary jurisdiction pursuant to 28 U.S.C. § 1963.

3.     This court has personal jurisdiction over the Respondent Banks pursuant to Fed. R. Civ. P. 4(k) because they are either residents of New York under New York law or do business in New York.

4.     The Southern District of New York is the proper venue pursuant to 28 U.S.C. § 1391.

## FACTUAL AND PROCEDURAL HISTORY

5.     This action arises from a foreign judgment entered on March 31, 2011 in United States District Court for the District of Columbia, Case No. 03-cv-00749, in favor of the Baker Plaintiffs and against the Syria Judgment Debtors, in the total amount of $601,969,151.50. The judgment was entered under the Foreign Sovereign Immunity Act pursuant to the "terrorism exception" of 28 U.S.C. § 1605A. To date, the Syria Judgment Debtors have not voluntarily paid the final March 31, 2011 Judgment.

6.     Under 28 U.S.C. § 1610(c), a "reasonable period of time" must pass after a foreign sovereign receives notice of a judgment entered against it before the judgment creditor may initiate post-judgment attachment or execution proceedings.  On September 1, 2011, the United States District Court for the District of Columbia determined that a "reasonable period of time" had passed since the Syria Judgment Debtors received notice of the judgment entered against them and entered an Order under 28 U.S.C. § 1610(c) authorizing enforcement of the judgment against the Syria Judgment Debtors.

7.     The Baker Petitioners initiated post-judgment enforcement proceedings in the District of Columbia and issued a subpoena to the United States Department of Treasury Office of Foreign Assets Control ("OFAC").  On November 23, 2011, pursuant to a motion filed by OFAC, a protective order (the "OFAC Protective Order") was entered by the U.S. District Court for the District of Columbia, which required certain information produced in response to the Baker Petitioners' subpoena to be kept confidential.  In response to the Baker Petitioners' subpoena and pursuant to the OFAC Protective Order, OFAC disclosed confidential information identifying certain assets of the Syria Judgment Debtors that are located within the Southern District of New York.

8.     On December 19, 2011, the Baker Plaintiffs registered the judgment in the Southern District of New York.  Baker, et al. v. Great Socialist People's Libyan Arab Jamahiriya, No. 11-mc-00434 (S.D.N.Y.) (Docket No. 1).  Soon thereafter, and because the Syrian Arab Republic is a foreign sovereign, the Baker Petitioners moved for an order pursuant to 28 U.S.C. § 1610(c) of the FSIA authorizing them to enforce the judgment against the Syria Judgment Debtors.  No. 11-mc-00434 (S.D.N.Y.) (Docket No. 3).  The District Court for the District of Columbia had already granted a similar motion in the Baker Petitioners' favor.  The

Baker Petitioners made another motion in the Southern District of New York because case law suggests that in order for a judgment to be enforced against a foreign sovereign, it is necessary for the district court in each federal district where petitioners initiate enforcement proceedings to enter an order pursuant to 28 U.S.C. § 1610(c).  See Levin v. Bank of N.Y., No. 09-5900, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011).  The Baker Petitioners' motion was promptly granted.  11-mc-00434 (S.D.N.Y.) (Docket No. 2).

9.       Thus, the Baker Petitioners began the process of enforcing the judgment against the Syria Judgment Debtors in New York.  Based on a response the Baker Petitioners received to its subpoena to the Office of Foreign Assets Control (OFAC) – which response was filed under seal in  Case No. 11-mc-00434 (S.D.N.Y.) – the Baker Petitioners enlisted the United States Marshals to serve writs of execution on the Respondent Banks.  The United States Marshals effected service of the writ on the Respondent Banks, with the exception of JPMorgan, on or about January 17, 2012.  (Exhibit A.)  The United States Marshals effected service of the writ on JPMorgan on February 23, 2012.  Id.

10.       ▓▓▓▓▓▓▓▓▓ responded to the writ of execution on or about February 10, 2012 and stated that it was "holding funds of ▓▓▓▓▓▓▓▓▓▓ belonging to the ▓▓▓▓▓▓▓▓▓▓," but that "such funds have been blocked by regulations of the Treasury Department's [OFAC]."  (Exhibit B.)

11.       ▓▓▓▓▓ responded to the writ of execution on or about March 6, 2012, stating that it may hold asset of the Syrian Judgment Debtors "in accounts that are blocked pursuant to Presidential Executive Orders . . . or pursuant to the Syrian Sanctions Regulations . . . promulgated by [OFAC]."  (Exhibit W.)

12.   ▓▓▓▓ responded to the writ of execution on or about March 13, 2012, stating that "[t]he assets at issue are blocked pursuant to regulations issued by [OFAC] and/or Executive Order 13582 . . . ." (Exhibit C.)

13.   ▓▓▓▓▓▓▓▓▓▓▓ responded to the writ of execution on our about March 14, 2012, noting that it was

> holding certain blocked funds, consisting of the proceeds of blocked wire transfers in which ▓▓▓▓▓ acted as an intermediary bank or participating bank, in instances where the wire transfers were blocked pursuant to Presidential Executive Orders issued with respect to the [Syrian Arab Republic] or persons or entities having relationship with the [Syrian Arab Republic] or pursuant to the Syrian Sanctions Regulations promulgated by [OFAC] . . . .

(Exhibit D.)

14.   Neither ▓▓▓▓▓ nor ▓▓▓▓▓ responded to the writ of execution.

15.   The Baker Petitioners then began serving information subpoenas on the Respondent Banks in an effort to learn what types of assets the Respondent Banks held in the name of, or for the benefit of, the Syria Judgment Debtors. Specifically, these information subpoenas asked the Respondent Banks to:

> 1. List any assets (i) that judgment debtors Syrian Arab Republic, Syrian Air Force, and General Muhammed al-Khuli presently hold at any branch of your bank; (ii) that are blocked pursuant to Presidential Executive Orders issued with respect to the Syrian Arab Republic or persons or entities having a relationship with the Syrian Arab Republic; or (iii) that are blocked pursuant to the Syrian Sanctions Regulations promulgated by [OFAC]; and for each such asset, identify the type of asset and its current location.

> 2. Identify by account number, name of the account holder, date, value, and any other pertinent identifying information, any account at any branch of your bank (i) held by or for the benefit of judgment debtors Syrian Arab Republic, Syrian Air Force, and General Muhammed al-Khuli; (ii) that is blocked pursuant to Presidential Executive Orders issued with respect to the Syrian

Arab Republic or persons or entities having a relationship with the Syrian Arab Republic; or (iii) that is blocked pursuant to the Syrian Sanctions Regulations promulgated by [OFAC]; and for each such account, identify the location of the branch where the account is located.

(Exhibit E.) Over the course of several months, the Respondent Banks responded to these information subpoenas.

▓▓▓▓▓▓▓▓▓▓

16.   ▓▓▓▓▓▓▓▓▓▓ does business in New York through its New York branch, located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

17.   ▓▓▓▓▓▓▓▓▓▓ responded to the Baker Petitioners' information subpoena on April 4, 2012, stating that it was "holding funds . . . totaling ▓▓▓▓▓▓," which funds "belong to the ▓▓▓▓▓▓▓▓▓▓ and are held in the form of a blocked time deposit with a one-month term." (Exhibit F.) On April 13, 2012, counsel for ▓▓▓▓▓▓▓▓▓▓ sent a letter clarifying the bank's subpoena response. (Exhibit G.) Specifically, counsel noted that "the funds held [by ▓▓▓▓▓▓▓▓▓▓] in a Time Deposit Account for the ▓▓▓▓▓▓▓▓▓▓ are ▓▓▓▓▓▓" and that the "Time Deposit in which those funds are held has this account number: ▓▓▓▓▓▓." Id. Counsel also said that the "name on the Time Deposit Account is: ▓▓▓▓▓▓▓▓▓▓▓▓." Id.

18.   According to OFAC, the ▓▓▓▓▓▓▓▓▓▓ is "a ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓." (Exhibit H.) On August 10, 2011, OFAC blocked the assets of the ▓▓▓▓▓▓▓▓▓▓ pursuant to Executive Order 13,382, which "targets proliferators of weapons of mass destruction." Id. As a result, the ▓▓▓▓▓▓▓▓▓▓ was placed on the Specially Designated Nationals and Blocked Persons list ("SDN List") promulgated by OFAC. The SDN List, OFAC instructs, is comprised of "individuals and

companies <u>owned or controlled</u> by, or <u>acting for or on behalf of</u>, targeted countries." (Exhibits I & J (emphasis added).)

▒▒▒▒▒.

19.    Respondent ▒▒▒▒▒ is a Delaware corporation with a principal place of business in New York County, New York.

20.    ▒▒▒▒▒ responded to the Baker Petitioners' information subpoena noting that it was "holding assets that are blocked pursuant to the Executive Orders or the [Syrian Sanctions Regulations]" and that it had "already provided information with respect to ▒▒▒▒ of those blocked assets to [the Baker Petitioners] in response to an Amended Garnishment Summons dated January 5, 2012, that was served on it in an action captioned <u>Patrick Scott Baker, et al. v. Syrian Arab Republic, et al.</u>, Case No. 11 CV. 08913 [the "Illinois Baker Action"], in the United States District Court for the Northern District of Illinois . . . ." (Exhibit X.) ▒▒▒▒▒ noted that it suspected that "▒▒▒▒▒ of the blocked accounts referred to above are ▒▒▒▒▒▒▒▒." <u>Id.</u> (emphasis added). Relevant excerpts of ▒▒▒▒▒ response to the Amended Garnishment Summons, served in the Illinois Baker Action, is annexed hereto as Exhibit Y.

21.    These ▒▒▒▒ accounts total ▒▒▒▒▒▒. (Exhibit Y; <u>see also</u> Exhibit AA.) ▒▒▒▒▒ notes the "Reason for Block" on each of the blocked accounts.  One of the accounts is held by ▒▒▒▒▒ at the request of ▒▒▒▒. ▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒ that has already been ruled an agency or instrumentality of Syria in <u>Gates, et al. v. Syrian Arab Republic, et al</u>, No. 11-cv-8715 (N.D. Ill.) (▒▒▒▒▒▒▒▒▒ ▒) (the "Illinois Gates Action"), is identified as having an interest in that account.

22.    ▒▒▒▒▒ of the accounts are blocked because the originating bank, beneficiary, or account-holder is ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒, which ▒▒▒▒▒▒ admits is a "Government of Syria entity." <u>See id.</u>  OFAC acknowledges that ▒▒▒▒▒▒

████ is an agent or instrumentality of Syria and that its assets have been blocked pursuant to Presidential Executive Orders.  (See Exhibit Z.)

23.    ████ of the accounts, ██████ says, have as their beneficiary ██████████ ██████. As discussed above, according to OFAC, ████████████████ is "█ ██████████████████████████████." (Exhibit H.)  It is also on the SDN List and had its assets blocked by Executive Order.

24.    ████ of the accounts ██████ identified have as their originator either ██████ ██████, or a joint venture with ██████████. (Exhibit Y.)  ████████ admits that ████████████ is a "████████████████████████., which is 100% Syrian state owned." Id.

25.    ████ of the accounts ██████ identified are linked to ████████████. ██████ appears on the SDN List.  (Exhibit J.)  According to OFAC, ██████ is owned – at least fifty percent – by ████████, who is described as "██████████████████████ ██████████████████████████████████████████████." (Exhibit N.)  ██████ is also the maternal ████████████████████ and through this relationship, he "remains one of the primary centers of corruption in Syria." Id. ████████ asserts were blocked pursuant to Executive Order 13,460, resulting in his being placed on the SDN List.  (Exhibits J & O.)  Due to ████████ ownership interest in ██████, it appears on the SDN List as a direct result of that Executive Order.

26.    One of the accounts ██████ identified is held by ████████████, who ██████ admits is on the SND List.  (Exhibits Y & J.)

27.    In addition, ▨ of the accounts ▨ identified has, as its originator, ▨ ▨, which ▨ admits is a "Government of Syria entity." (Exhibit Y.)

28.    ▨ recently provided, under seal, to the Baker Petitioners, a copy of its September, 2012 filing with OFAC, a copy of which is attached hereto as Exhibit AA, which definitively states that the Syrian assets it is holding are located i▨ ▨," and itemizes said blocked holdings, including those attached and referenced accounts enumerated above, each of which this court should forthwith order turned over to the Baker Petitioners.

▨

29.    ▨ has its principal place of business in New York County, New York.

30.    ▨ responded to the Baker Petitioners' information subpoena June 8, 2012 acknowledging that it was holding assets in the form of wire transfers and accounts totaling ▨. (Exhibit K) The originators of the wire transfers were identified as ▨ ▨, ▨, and ▨. Id. The beneficiary of the blocked account is listed as ▨. Id. ▨ is wholly-owned by the Syrian government.  (Exhibit L)

▨

31.    ▨ is a New York corporation with a principal place of business in New York County, New York.

32.    ▨ responded to the Baker Petitioners' information subpoena on July 5, 2012, stating that it was holding "blocked assets that were blocked pursuant to the Presidential Executive Orders and the Syrian Sanctions Regulations" and that "[a]ll such assets are the proceeds of blocked wire transfers in which ▨ was designated to act as

an intermediary bank, and all such assets are being held by ▮▮▮▮▮ in the State of New

York." (Exhibit M.) Specifically, ▮▮▮▮▮▮▮▮▮▮ stated that it was holding

▮▮▮▮▮▮ that was blocked due to the involvement of the following entities: ▮▮▮▮, ▮▮▮▮,

▮▮▮▮▮▮, ▮▮▮▮▮▮, ▮▮▮▮▮, ▮▮▮▮▮▮, ▮▮▮▮▮▮▮,

▮▮▮▮▮▮, ▮▮▮▮▮▮▮, and ▮▮▮▮. Id.

33.   ▮▮▮▮, ▮▮▮▮▮▮, ▮▮▮▮▮,

▮▮▮▮, and ▮▮▮▮ all appear on the SDN List. (Exhibit J.) According to OFAC, ▮▮▮▮

▮▮▮▮▮, like ▮▮▮, is owned– at least fifty percent – by ▮▮▮▮▮, whose asserts

were blocked pursuant to Executive Order 13,460, resulting in his being placed on the SDN List.

(Silverman Decl., Exs. J & O.) Due to ▮▮▮▮ ownership interest in ▮▮▮▮ and ▮▮▮▮

▮▮▮▮, those entities appear on the SDN List as a direct result of that Executive Order.

34.   ▮▮▮▮▮ was established as ▮▮▮▮ main holding company. (Exhibit P)

Its asserts were blocked pursuant to Executive Order 13,572, which is the reason it appears on

the SDN List. (Exhibits J & Q.)

35.   Though not on the SDN List, ▮▮▮▮▮▮▮ is also owned by the

▮▮▮▮ family. (Exhibit R.)

36.   ▮▮▮▮▮▮ is owned by ▮▮▮▮▮▮▮▮.

(Silverman Decl., Ex. S.)

▮▮▮▮▮

37.   ▮▮▮▮▮ has a branch in New York County, New York; thus, it does

business there.

38.   ▮▮▮▮▮ responded to the Baker Petitioners' information subpoena on

May 21, 2012. (Exhibit T.) It identified one account, valued at ▮▮▮▮, as being held by the

▮▮▮▮▮▮▮▮▮▮▮, which ▮▮▮ acknowledged was "owned, in



part, by ██████████████████████, which is wholly owned by the ████████ ██████ and was added to the SDN list . . . pursuant to Executive Order 13582 dated August 17, 2011." Id. ██████ also identified three accounts totaling ████████ and held by either ██████████ (presumably an alias of ██████████████████) or ██████████████ – both of which are discussed, supra. These accounts, ██████ acknowledged, were "blocked pursuant to Syrian Sanctions Regulations." Id.

██████████████

39.      ██████████ has a branch in New York County, New York; thus, it does business there.

40.      ██████████ responded to the Baker Petitioners' information subpoena on April 30, 2012, stating that it has "identified a single wire transfer of funds on May 7, 2009 in the amount of ████████ that was blocked under applicable presidential executive orders and/or regulations promulgated by [OFAC] with respect to ██████████. The blocked amount is held at [██████████] New York Branch . . . ." (Exhibit U.) In response to a deposition subpoena sent by the Baker Plaintiffs in an effort clarify to ██████████ response, ██████████ counsel sent an email confirming the account holder and the amount in the account. (Exhibit V.) As discussed above, ██████ is on the SDN List and is controlled by ██████, ██████████████ ██████████, who is also on the SDN List and whose assets were blocked pursuant to Executive Order 13,460.

<u>CLAIM FOR RELIEF: TURNOVER</u>

41.      Under a well-established exception to the FSIA, the Respondent Banks are obliged to turn over assets they identified in response to the Baker Plaintiffs' information subpoenas.

Agencies and Instrumentalities of a Foreign States are Not Immune From Execution When
That Foreign State is Subject to a Suit for Money Damages Arising From a Terrorist Act

42.     While the FSIA generally prohibits lawsuits against foreign states, see 28 U.S.C.

§ 1604, "[a] foreign state shall not be immune from the jurisdiction of the courts of the United

States . . . in which money damages are sought against a foreign state for personal injury or death

that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the

provision of material support or resources for such an act . . . ." 28 U.S.C. § 1605A (emphasis

added).

43.     Furthermore, under 28 U.S.C. § 1610(g)(1), "the property of a foreign state

against which a judgment is entered under section 1605A, and the property of an agency or

instrumentality of such a state, including property that is a separate juridical entity or is an

interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of

execution." Id. (emphasis added).  An "agency or instrumentality of a foreign state means any

entity –

> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision
> thereof, or a majority of whose shares or other ownership interest
> is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States . . . nor
> created under the laws of any third country.

28 U.S.C. § 1603(b).  Execution on such entities is appropriate regardless of:

> (A) the level of economic control over the property by the
> government of the foreign state;
> (B) whether the profits of the property go to that government;
> (C) the degree to which officials of that government manage the
> property or otherwise control its daily affairs;
> (D) whether that government is the sole beneficiary in interest of
> the property; or
> (E) whether establishing the property as a separate entity would
> entitle the foreign state to benefits in United States courts while
> avoiding its obligations.

28 U.S.C. 1610(g)(1). In other words, section 1610(g) eliminates the ability of the Syrian Arab Republic to shield itself from liability through "tiered" ownership.

44.    The Terrorism Risk Insurance Act (TRIA), Pub L. No. 107-297 (codified as a note to 28 U.S.C. § 1610) makes blocked assets of a terrorist state available to satisfy certain judgments:

> in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Id. § 201(a) (emphasis added). A "blocked asset" is defined, inter alia, as "any asset seized or frozen by the United States under . . . sections 202 and 203 of the International Emergency Economic Powers Act ["IEEPA"] (50 U.S.C. 1701; 1702) . . . ." Id. § 201(d); see Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi, 556 U.S. 366, 369 (2009) (TRIA "authorizes holders of terrorism-related judgments . . . to attach . . . assets that the United States has 'blocked.'").

45.    All Executive Orders OFAC identifies as relating to Syrian sanctions cite these sections of the IEEPA as being at least part of the basis for the blocking the assets of entities discussed therein. See, e.g., Exec. Order Nos. 13,338; 13,399; 13,460; 13,572; 13,573; 13,582; 13,606; & 13,608. Thus, section 201(a) of the TRIA applies to all funds blocked pursuant to these Executive Orders.

**The Assets Identified by the Respondent Banks in Their
Information Subpoena Responses Must be Turned Over as a Matter of Law**

46.    The assets identified by the Respondent Banks and discussed in paragraphs 16-39., supra, belong to the agencies or instrumentalities of the Syrian government. As such, those

assets, each of which are held in this jurisdiction, must be turned over to the Baker Petitioners to help satisfy their judgment against the Syria Judgment Debtors.

47.   It is clear that the assets belong to the agencies and instrumentalities of Syria for a number of reasons, first and foremost of which is that, by identifying the assets in their information subpoena responses, the Respondent Banks each implicitly admit that those assets were either held by the Syria Judgment Debtors, blocked pursuant to Presidential Executive Orders issued with respect to the Syrian Arab Republic, or blocked pursuant to Syrian Sanctions Regulations.  Under any of those circumstances, as discussed above, the law allows that the assets be turned over to satisfy a judgment against Syria.

48.   Second, the Respondent Banks' admissions notwithstanding, many of the assets they identified belong to entities owned by the Syrian state (e.g., ███████████████, ███████████████, ███████████████, ███████████████, etc.), thus, clearly falling under the definition of agencies and instrumentalities in 28 U.S.C. 1603(b).  That is, they are "separate legal person[s] . . . which [are organs] of a foreign state . . . or a majority of whose shares or other ownership interest is owned by a foreign state . . . and neither a citizen of a State of the United States . . . nor created under the laws of any third country."

49.   Third, a majority of the assets identified by the Respondent Banks belong to entities that appear on the SDN List (e.g., ██████, ██████████, ████████, etc.).  As discussed above, the SDN List is comprised of "individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries," (Exhibit I. (emphasis added)), i.e., agencies and instrumentalities of the Syrian Arab Republic.

50.   Finally, some of these assets were explicitly blocked by Executive Orders that were made pursuant – at least in part – to sections 202 and 203 of the IEEPA (e.g., assets held by

██████████, █████, ██████████████, ████████, etc.).  Thus, they fall squarely within the definition of "blocked asset" under the TRIA, which assets, as discussed above, "shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." § 201(a) (emphasis added).

51.     Pursuant to Fed. R. Civ. P. 69(a) and N.Y. C.P.L.R. §§ 5225 and 5227, these assets, which are all subject to the jurisdiction of this Court and are subject to execution in this district, must be turned over to the Baker Petitioners.

52.     Fed. R. Civ. P. 69(a) says that "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located . . . ." – in this case, New York.

53.     Under N.Y. C.P.L.R. § 5225:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . .

Id.; see also N.Y. C.P.L.R. § 5227 ("Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment . . . .").

54.    As discussed above, Syria has an interest in the assets identified by the
Respondent Banks and referenced in this Petition.  Furthermore, The Baker Petitioners' rights to
those assets are superior to those of the Respondent Banks because they were blocked by OFAC
or Executive Order and because the Respondent Banks are mere disinterested stakeholders in
those assets.  See Morgenthow & Latham v. Bank of N.Y. Co., 836 N.Y.S.2d 579 (N.Y. App.
Div. 2007).

55.    Some of the assets held by ███████ for the benefit of Syria are currently at issue
in the Illinois Gates Action – specifically, those held by ███████ at the request of ███████.
However, ███████ has definitively indicated that all of the Syrian assets ███████ has
identified to OFAC, and to counsel for the Baker Petitioners are ███████████, and none
of them are ███████████.  Thus, this Court – and not the Illinois court – has a superior
interest in determining the disposition of those assets.  Moreover, no party has a superior claim to
said ███████████ assets that are subject to turnover in accordance with all applicable legal
principles related hereto.

### PRAYER FOR RELIEF

WHEREFORE, the Baker Petitioners demand that this Court enter an Order, pursuant to
the Foreign Sovereign Immunities Act, Terrorist Risk Insurance Act, Fed. R. Civ. P. 69(a), and
N.Y. C.P.L.R. §§ 5225 and 5227:

(a)    Directing ███████████ to turnover to the U.S. Marshal all assets in its

possession, custody, or control that belong to Syria, its agencies or

instrumentalities, and/or separate judicial entities in which Syria has an interest,

direct or otherwise, including, but not limited to, all assets in those accounts

identified in Exhibits F & G.

(b)     Directing ████████████. to turnover to the U.S. Marshal all assets in its possession, custody, or control that belong to Syria, its agencies or instrumentalities, and/or separate judicial entities in which Syria has an interest, direct or otherwise, including, but not limited to, all assets in those accounts identified in Exhibits Y and AA;

(c)     directing ██████████ to turnover to the U.S. Marshal all assets in its possession, custody, or control that belong to Syria, its agencies or instrumentalities, and/or separate judicial entities in which Syria has an interest, direct or otherwise, including, but not limited to, all assets in those accounts identified in Exhibit K;

(d)     directing ████████████ to turnover to the U.S. Marshal all assets in its possession, custody, or control that belong to Syria, its agencies or instrumentalities, and/or separate judicial entities in which Syria has an interest, direct or otherwise, including, but not limited to, all assets in those accounts identified in Exhibit M;

(e)     directing ██████████ to turnover to the U.S. Marshal all assets in its possession, custody, or control that belong to Syria, its agencies or instrumentalities, and/or separate judicial entities in which Syria has an interest, direct or otherwise, including, but not limited to, all assets in those accounts identified in Exhibit T;

(f)     directing ██████████ to turnover to the U.S. Marshal all assets in its possession, custody, or control that belong to Syria, its agencies or instrumentalities, and/or separate judicial entities in which Syria has an interest,

direct or otherwise, including, but not limited to, all assets in those accounts

identified in Exhibits U & V;

(g)   awarding the Baker Petitioners attorneys' fees, costs, and disbursements

associated with this action; and awarding such other and further relief in favor of

the Baker Petitioners as this Court deems just and proper.

Dated: New York, NY
       October 15, 2012


Ira G. Greenberg
Zachary W. Silverman
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, NY 10022
212.308.4411
Attorneys for Plaintiffs

AM 17443136.1

# EXHIBIT A
# FILED UNDER SEAL

# EXHIBIT B

# FILED UNDER SEAL

# EXHIBIT C
# FILED UNDER SEAL

# EXHIBIT D
# FILED UNDER SEAL

# EXHIBIT E

## SCHEDULE A

1.    List any assets (i) that judgment debtors Syrian Arab Republic, Syrian Air Force, and General Muhammed al-Khuli presently hold at any branch of your bank; (ii) that are blocked pursuant to Presidential Executive Orders issued with respect to the Syrian Arab Republic or persons or entities having a relationship with the Syrian Arab Republic; or (iii) that are blocked pursuant to the Syrian Sanctions Regulations promulgated by the Office of Foreign Assets Control; and for each such asset, identify the type of asset and its current location.

2.    Identify by account number, name of the account holder, date, value, and any other pertinent identifying information, any account at any branch of your bank (i) held by or for the benefit of judgment debtors Syrian Arab Republic, Syrian Air Force, and General Muhammed al-Khuli; (ii) that is blocked pursuant to Presidential Executive Orders issued with respect to the Syrian Arab Republic or persons or entities having a relationship with the Syrian Arab Republic; or (iii) that is blocked pursuant to the Syrian Sanctions Regulations promulgated by the Office of Foreign Assets Control; and for each such account, identify the location of the branch where the account is located.

# EXHIBIT F

# FILED UNDER SEAL

# EXHIBIT G
# FILED UNDER SEAL

# EXHIBIT H

# FILED UNDER SEAL

EXHIBIT I

# U.S. DEPARTMENT OF THE TREASURY

## Resource Center

**Specially Designated Nationals List (SDN)**
8/6/2012
Get e-mail updates when this information changes.

As part of its enforcement efforts, OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals" or "SDNs." Their assets are blocked and U.S. persons are generally prohibited from dealing with them. Click here for more information on Treasury's Sanctions Programs.

**SDN Search**
Online application to search the SDN list.

Full Lists:
Complete Specially Designated Nationals List (in PDF format)
Having trouble opening the PDF version of the SDN list?
Complete Specially Designated Nationals List (in TEXT format)

Lists by Program and Country:
SDN List Sorted by OFAC Sanctions Program
SDN List Sorted by Country

Changes to the SDN List:
What changed on the list when it was last updated?
Archive of changes to the SDN list

Guidance:
Specially Designated Nationals Alias Screening
Definition of SDN List program tags

DATA CENTER - Specially Designated Nationals List - formatted for information processing

| File Name | Description |
|---|---|
| SDALLW32.EXE | Contains 37 files in a self-extracting archive (archive includes CSV, @ sign delimited, fixed-width delimited XML versions of the SDN list) |
| SDALL.ZIP | Contains 37 files in a ZIP archive (archive includes CSV, @ sign delimited, fixed-width delimited XML versions of the SDN list) |
| SDN.XML | XML version of the SDN list |
| SDN.DEL | @ sign delimited primary SDN names |
| ADD.DEL | @ sign delimited addresses (links to SDN.DEL and ALT.DEL) |
| ALT.DEL | @ sign delimited alternate (aka) names (links to ADD.DEL and SDN.DEL) |
| SDN.FF | fixed-width primary SDN names |
| ADD.FF | fixed-width SDN addresses (links to SDN.FF and ALT.FF) |
| ALT.FF | fixed-width alternate (aka) names (links to ADD.FF and SDN.FF) |
| SDN.CSV | comma delimited primary SDN names |
| ADD.CSV | comma delimited SDN addresses (links to SDN.CSV and ALT.CSV) |
| ALT.CSV | comma delimited alternate (aka) names (links to ADD.CSV and SDN.CSV) |
| SDN.PIP | "|" (pipe) character delimited primary SDN names |
| ADD.PIP | "|" (pipe) character delimited addresses (links to SDN.PIP and ALT.PIP) |
| ALT.PIP | "|" (pipe) character delimited alternate (aka) names (links to ADD.PIP and SDN.PIP) |

Specially Designated Nationals List Data Specifications, Schemas and Technical Information
Data specification for ASCII Delimited, Fixed-Width and CSV data files
Specially Designated Nationals List XML Schema (XSD file)
Recent Changes to SDN Data Formats and other Technical Corrections

Specialty Designated Nationals List (SDN)

Other OFAC Sanctions Lists:
Palestinian Legislative Council (NS-PLC) list
The List of Foreign Financial Institutions Subject to Part 561 (the Part 561 List)

# EXHIBIT J
# FILED UNDER SEAL

# EXHIBIT K
# FILED UNDER SEAL

# EXHIBIT L
# FILED UNDER SEAL

# EXHIBIT M

# FILED UNDER SEAL

# EXHIBIT N
# FILED UNDER SEAL

# EXHIBIT O

# FILED UNDER SEAL

# EXHIBIT P

# FILED UNDER SEAL

# EXHIBIT Q

# FILED UNDER SEAL

# EXHIBIT R
# FILED UNDER SEAL

# EXHIBIT S
# FILED UNDER SEAL

# EXHIBIT T

# FILED UNDER SEAL

# EXHIBIT U

# FILED UNDER SEAL

# EXHIBIT V

# FILED UNDER SEAL

# EXHIBIT W

# FILED UNDER SEAL

# EXHIBIT X
# FILED UNDER SEAL

# EXHIBIT Y

# FILED UNDER SEAL

# EXHIBIT Z
# FILED UNDER SEAL

# EXHIBIT AA
# FILED UNDER SEAL