UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PATRICK SCOTT BAKER, et al.,

                Petitioners,

        -against-

NATIONAL BANK OF EGYPT, JPMORGAN
CHASE & CO., JPMORGAN CHASE BANK,
N.A., CITIBANK, N.A., THE BANK OF NEW
YORK MELLON, INTESA SANPAOLO SPA and
COMMERZBANK AG,

                Respondents.
------------------------------------------------------------x
THE BANK OF NEW YORK MELLON,

                Third-Party Petitioner,

        -against-

PATRICK SCOTT BAKER, JERRY BAKER,
LOIS BAKER, LOIS BAKER (AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
DAVID BAKER), STACIE BAKER, PATRICIA
A. HENRY, PATRICIA A. HENRY (AS THE
SUBSTITUTE EXECUTRIX AND SUCCESSOR
IN INTEREST OF THE ESTATE OF SCARLETT
ROGENCAMP), PATRICIA A. HENRY (AS THE
EXECUTRIX OF THE ESTATE OF HETTY E.
PETERSON), VALERIE PETERSON (AS
EXECUTOR OF THE ESTATE OF VERNON W.
PETERSON), KATHARINE D. DORIS, PAUL G.
PETERSON, MICHELLE Y. HOLBROOK,
JACKIE NINK PFLUG, RYLMA NINK,
EUGENE NINK, GLORIA NIN, MARY NINK,
SCOTT PFLUG,

                Counterclaim Respondents,

        -and-

FRANCIS GATES (INDIVIDUALLY AND AS
ADMINISTRATOR OF THE ESTATE OF OLIN

Index No. 12 Civ. 7698 (GBD)

THIRD-PARTY PETITION
OF RESPONDENT THE
BANK OF NEW YORK
MELLON FOR
INTERPLEADER AND
OTHER RELIEF

EUGENE "JACK" ARMSTRONG), PATI HENSLEY, SARA HENSLEY, JAN SMITH, FRONTIER OPPORTUNITIES FUND I, LP, SHUAA CAPITAL PSC, SYRIATEL MOBILE TELCOM S.A., NATIONAL BANK OF KUWAIT SAK, NATIONAL BANK OF KUWAIT (NEW YORK BRANCH), A.H. AL SAGAR & BROS., RIYAD BANK, CREDIT SUISSE, SWITZERLAND, ABDULRAHMAN ABDULLAH HAMED AL ZAMIL, HSBC PRIVATE BANK (SUISSE) SA (HONG KONG BRANCH), HSBC BANK USA, N.A., REX BERNARD MARTIN JR., BANK MUSCAT, AMWAL Q.S.C., ABN AMRO BANK N.V., DUBAI, ABN AMRO BANK N.V., NEW YORK, ABRAAJ CAPITAL (CAYMAN) LIMITED, ABU DHABI COMMERCIAL BANK, P.J.S.C., MAJID AL FUTTAIM TRUST LLC, HSBC BANK MIDDLE EAST LIMITED, DUBAI INTERNATIONAL CAPITAL LLC, INHERITORS OF LATE ABDULAZIZ AL SAGAR, EMIRATES NBD BANK (AS SUCCESSOR TO NATIONAL BANK OF DUBAI LTD.), AL FUTTAIM CAPITAL COMPANY, LLC, KHALID ABDULLA AL SAGAR, CHAM HOLDING CO. S.A.L., THE NATIONAL BANK OF RAS AL-KHAIMAH, TRIAD SOFTWARE SERVICES, SYRIA DUTY FREE, LEBANESE CANADIAN BANK S.A.L., BLOM BANK S.A.L., CYPRUS, IBCS TRADING & DISTRIBUTION CO. LTD., PUIG MIDDLE EAST FZCO, SUEZ CANAL INSURANCE, SUEZ CANAL BANK, BYBLOS BANK S.A.L., ARAB UNION REINSURANCE CO., J.B. BODA REINSURANCE BROKERS PVT. LTD., UNION BANK OF INDIA, ARAB UNION REINSURANCE CO., SYRIAN ARAB AIRLINES, BRITISH ARAB COMMERCIAL BANK PLC, BANK OF IRELAND GLOBAL MARKETS, SHANNONSIDE AVIATION SERVICES LTD.

       Third-Party Respondents.
------------------------------------------------------------x

Respondent and third-party petitioner The Bank of New York Mellon ("BNY Mellon"), by its attorneys, Levi Lubarsky & Feigenbaum LLP, for its third-party petition filed in response to the First Amended Petition for Turnover dated January 11, 2013 (the "Petition") of petitioners Patrick Scott Baker, et al. ("Petitioners" or the "Bakers"), alleges as follows:

## NATURE OF THIS PROCEEDING

1. BNY Mellon has filed this third-party petition pursuant to Fed. R. Civ. P. 22, Sections 1335 and 2361 of Title 28, United States Code, Section 134 of the New York Banking Law, and New York Civil Practice Law and Rules ("CPLR") §§ 1006 and 5239 for a judicial determination of the rights, if any, of Petitioners, the persons and entities named as third-party respondents, and any other persons or entities to the funds in various blocked accounts that are the subject of the Petition as it relates to BNY Mellon. The blocked accounts, identified in the annexed Exhibit A and referred to here as the "Blocked Assets," are being held by BNY Mellon as required by certain Presidential Executive Orders, and by regulations promulgated by the Office of Foreign Assets Control of the United State Treasury Department ("OFAC"), that apply to the Syrian Arab Republic ("Syria") and its "agencies or instrumentalities" within the meaning of 28 U.S.C. § 1603(b). The Petition, a redacted copy of which, without exhibits, is annexed as Exhibit B, seeks an order under CPLR §§ 5225(b) and 5227 directing BNY Mellon to turn over the Blocked Assets to Petitioners to help satisfy Petitioners' judgment, entered in March 2011, for $601,969,151.50 (the "Judgment") against Syria, the Syrian Air Force and General Muhammed al-Khuli (collectively, the "Judgment Debtors").

2. Petitioners, however, are not the only ones who may have valid claims or rights to the Blocked Assets. Other persons and entities may also have such claims or rights. One such group of persons consist of third-party respondents Francis Gates, et al. (the "Gates"), who, like

3

the Bakers, have a judgment against Syria based on acts of terrorism within the scope of 28 U.S.C. § 1605A, and who also may claim the right to have the Blocked Assets turned over to them to satisfy that judgment. Another group of persons and entities with possible claims or rights to the Blocked Assets, referred to here as the "Wire Transfer Respondents," consists of the parties to the wire transfers whose blocking gave rise to the Blocked Assets, as well as an entity whose involvement with certain wire transfers appears to have triggered the blocking of those particular wires.

    3.    BNY Mellon has accordingly filed counterclaims against Petitioners, and third-party claims against the Gates and the Wire Transfer Respondents, to bring those persons and entities before the Court and give them the chance to assert any claims they may have to the Blocked Assets. The Court can then determine whether the funds should be turned over to Petitioners, the Gates, or one or more of the Wire Transfer Respondents, or whether the funds should be dealt with in some other way. By Order entered March 7, 2014 (annexed as Exhibit C), the Court established the procedures governing BNY Mellon's and other respondent banks' initiation of third-party proceedings and service of their respective third-party petitions.

    4.    This third-party proceeding is in all likelihood the only chance that the third-party respondents will ever have to assert a claim or right to the Blocked Assets. Unless they appear in this proceeding by filing an answer within the specified time that asserts their claims or rights to the Blocked Assets, any such claims or rights will be extinguished, and the funds at issue may be turned over to Petitioners to the extent Petitioners establish that they are entitled to the funds. As part of any judgment directing the turnover, to Petitioners or anyone else, of the funds in some or all of the Blocked Assets, BNY Mellon seeks a discharge, binding on all parties to this third-

party proceeding and all other persons and entities, protecting it against any future liability as to the Blocked Assets that will have been turned over.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over the counterclaims and third-party claims asserted herein (i) pursuant to 28 U.S.C. § 1331, because these claims arise under the laws and treaties of the United States, in particular the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602 et seq. (the "FSIA"), and the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002) ("TRIA"); (ii) pursuant to 12 U.S.C. § 632, because at least one of the third-party respondents is, upon information and belief, a corporation organized under the laws of the United States, and this proceeding arises out of transactions involving international or foreign banking or other international or foreign financial operations; (iii) pursuant to 28 U.S.C. § 1367, because the matters at issue in this proceeding are so related to the Bakers' turnover proceeding, which itself is within the Court's original jurisdiction, that they form part of the same case or controversy; (iv) pursuant to 28 U.S.C. § 1335, because the third-party claims are in the nature of interpleader, BNY Mellon has in its custody or possession property of the value or amount of $500 or more, and two or more adverse claimants named as third-party respondents are, upon information and belief, of adverse citizenship; and (v) pursuant to 28 U.S.C. § 1330 as to third-party respondents that are a foreign state, or a subdivision thereof, based on service upon such third-party respondents under FSIA § 1608.

6.  Upon information and belief, venue of the counterclaims and third-party claims asserted in this third-party complaint is properly set in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims – including the Bakers' filing of the Judgment in this Court, the Bakers' delivery of a writ of execution to the

United States Marshal's Office for the Southern District of New York (the "SDNY Marshal"), and the filing of the Bakers' Petition – occurred in this district, certain third-party respondents can be found here, and the Blocked Assets are located here.

## THE PARTIES

A.  The Counterclaim/Third-Party Petitioner

Respondent and counterclaim/third-party petitioner The Bank of New York Mellon (referred to above and hereafter as "BNY Mellon") is a New York State chartered banking institution with its principal place of business in the County and State of New York.

B.  The Counterclaim Respondents

7. Upon information and belief, counterclaim respondents Patrick Scott Baker, Jerry Baker, Lois Baker, Craig Baker (individually and as the personal representative of the Estate of David Baker), Stacie Baker, Patricia A. Henry (individually and as the substitute executrix for and successor-in-interest of the Estate of Scarlett Rogencamp, as the executrix of the Estate of Hetty E. Peterson), Valerie Peterson (as executor of the estate of Vernon W. Peterson), Katharine D. Doris, Paul G. Peterson, Michelle Y. Holbrook, Jackie Nink Pflug, Rylma Nink, Eugene Nink, Gloria Nink, Mary Nink and Scott Pflug (referred to collectively, above and hereafter, as "Petitioners" or the "Bakers") were plaintiffs in an action entitled Patrick Scott Baker, et al. v. Great Socialist People's Libyan Arab Jamahiriya, et al., No. 08-CV-0505 (JMF) (D.D.C.), in which they recovered the Judgment. Upon information and belief, the Bakers are citizens of the state of Washington, except that Valerie Peterson is a citizen of Virginia, Michelle Y. Holbrook is a citizen of Arizona, Jackie Nink Pflug and Scott Pflug are citizens of Minnesota, and Rylma Nink, Eugene Nink, Gloria Nink and Mary Nink are citizens of Texas.

C.   The Third-Party Respondents

8.   Upon information and belief, third-party respondents Francis Gates (sued individually and as administrator of the estate of Olin Eugene "Jack" Armstrong), Estate of Jack Armstrong, Pati Hensley (sued individually and as representative of the Estate of Jack Hensley), Estate of Jack Hensley, Sara Hensley and Jan Smith (collectively referred to above and hereafter as the "Gates") were plaintiffs in an action in the United States District Court for the District of Columbia entitled Francis Gates, et al. v. Syrian Arab Republic, et al., Case No. CA 06-1500 (RMC) (D.D.C.), in which they recovered a judgment against Syria in the amount of $412,909,587. Upon information and belief, defendants Francis Gates and Jan Smith are citizens of Michigan, and defendants Pati Hensley and Sara Hensley are citizens of Georgia.

9.   Upon information and belief, third-party respondent Frontier Opportunities Fund I, LP is a limited partnership or other legal entity organized and existing under the laws of Dubai, in the United Arab Emirates ("UAE"), with its principal place of business in Dubai.

10.   Upon information and belief, third-party respondent SHUAA Capital PSC is a bank, corporation or other legal entity organized and existing under the laws of Dubai, in the UAE, with its principal place of business in Dubai.

11.   Upon information and belief, third-party respondent Syriatel Mobile Telecom S.A. ("Syriatel") is a corporation or other legal entity organized and existing under the laws of Syria, with its principal place of business in Damascus, Syria.

12.   Upon information and belief, third-party respondent National Bank of Kuwait SAK is a bank organized and existing under the laws of the State of Kuwait ("Kuwait"), with its principal place of business in Kuwait City, Kuwait.

7

13. Upon information and belief, third-party respondent National Bank of Kuwait, New York, is a branch of National Bank of Kuwait SAK and is a bank organized and existing under the laws of Kuwait or New York State, with its principal place of business in New York State.

14. Upon information and belief, third-party respondent A.H. Al Sagar & Bros. is a corporation, partnership or other legal entity organized and existing under the laws of Kuwait, with its principal place of business in Kuwait City, Kuwait.

15. Upon information and belief, third-party respondent Credit Suisse, Switzerland is a bank organized and existing under the laws of the Swiss Confederation ("Switzerland"), with its principal place of business in Zurich, Switzerland.

16. Upon information and belief, third-party respondent Riyad Bank is a bank organized and existing under the laws of the Kingdom of Saudi Arabia ("Saudi Arabia"), with its principal place of business in Riyadh, Saudi Arabia.

17. Upon information and belief, third-party respondent Abdulrahman Abdullah Hamed al Zamil is a citizen and resident of Saudi Arabia.

18. Upon information and belief, third-party respondent HSBC Bank USA, N.A. is a national banking association organized and existing under the laws of the United States, with its principal place of business in New York State.

19. Upon information and belief, third-party respondent HSBC Private Bank (Suisse) S.A., Hong Kong is a branch of HSBC Private Bank (Suisse) S.A. and is a bank organized and existing under the laws of Switzerland, Hong Kong, or the People's Republic of China, with its principal place of business in Hong Kong.

20. Upon information and belief, third-party respondent Rex Bernard Martin, Jr. is a citizen and resident of the Republic of Singapore.

21. Upon information and belief, third-party respondent Bank Muscat is a bank organized and existing under the laws of the Sultanate of Oman ("Oman") with its principal place of business in Muscat, Oman.

22. Upon information and belief, third-party respondent ONIC Holding, also known as Oman National Investment Corporation Holding SAOG, is a corporation or other legal entity organized and existing under the laws of Oman, with its principal place of business in Muscat, Oman.

23. Upon information and belief, third-party respondent Amwal Q.S.C. is a corporation or other legal entity organized and existing under the laws of the State of Qatar ("Qatar"), with its principal place of business in Doha, Qatar.

24. Upon information and belief, third-party respondent ABN AMRO Bank N.V., Dubai is a branch of ABN AMRO Bank N.V. and is a bank organized and existing under the laws of the Netherlands or of Dubai, in the UAE, with its principal place of business in Dubai.

25. Upon information and belief, third-party respondent ABN AMRO Bank N.V., New York is a branch of ABN AMRO Bank N.V. and is a bank organized and existing under the laws of the Netherlands or New York State, with its principal place of business in New York State.

26. Upon information and belief, third-party respondent The Abraaj Group, as successor to Abraaj Capital (Cayman) Limited, is a corporation or other legal entity organized and existing under the laws of Dubai, in the UAE, with its principal place of business in Dubai.

27. Upon information and belief, third-party respondent Abu Dhabi Commercial Bank, P.J.S.C. is a bank organized and existing under the laws of Abu Dhabi, in the UAE, with its principal place of business in Abu Dhabi.

28. Upon information and belief, third-party respondent Majid Al Futtaim Trust LLC is a limited liability corporation, trust or other legal entity organized and existing under the laws of Dubai, in the UAE, with its principal place of business in Dubai.

29. Upon information and belief, third-party respondent HSBC Bank Middle East Limited, Dubai is a bank organized and existing under the laws of the Island of Jersey or Dubai, in the UAE, with its principal place of business in Dubai.

30. Upon information and belief, third-party respondent Dubai International Capital LLC is a limited liability corporation or other legal entity organized and existing under the laws of Dubai, in the UAE, with its principal place of business in Dubai.

31. Upon information and belief, third-party respondents Doe #1, Doe #2, Doe #3, Doe #4, Doe #5, Doe #6, Doe #7 and Doe # 8 are the inheritors of the late Abdulaziz Al Sagar, a former customer of the National Bank of Kuwait, who were identified (though without their names) as the intended recipients of a Syriatel dividend in the instructions for a wire transfer that was blocked by BNY Mellon on July 10, 2008. Upon information and belief, Does #1 through #8 are all citizens of a nation other than the United States.

32. Upon information and belief, third-party respondent Emirates NBD Bank is the successor to National Bank of Dubai Ltd. and is a bank organized and existing under the laws of Dubai, in the UAE, with its principal place of business in Dubai.

33. Upon information and belief, third-party respondent Al Futtaim Capital Company, LLC is a limited liability corporation or other legal entity organized and existing under the laws of Dubai, in the UAE, with its principal place of business in Dubai.

34. Upon information and belief, third-party respondent Khalid Abdulla Al Sagar is a citizen and resident of Kuwait.

35. Upon information and belief, third-party respondent Cham Holding Co. S.A.L. is a corporation or other legal entity organized and existing under the laws of Syria, with its principal place of business in Damascus, Syria.

36. Upon information and belief, third-party respondent The National Bank of Ras Al-Khaimah is a bank organized and existing under the laws of Ras Al-Khaimah, in the UAE, with its principal place of business in Ras Al-Khaimah.

37. Upon information and belief, third-party respondent Triad Software Services is a corporation or other legal entity organized and existing under the laws of Dubai, in the UAE, with its principal place of business in Dubai.

38. Upon information and belief, Syria Duty Free Shops, also known as Syria Duty Free, Ltd., is a corporation or other legal entity organized and existing under the laws of Syria, with its principal place of business in Damascus, Syria.

39. Upon information and belief, third-party respondent Lebanese Canadian Bank S.A.L. is a bank organized and existing under the laws of Lebanon, with its principal place of business in Beirut, Lebanon.

40. Upon information and belief, third-party respondent Blom Bank S.A.L., Cyprus is a branch of Blom Bank S.A.L. and is a bank organized and existing under the laws of Lebanon or the Republic of Cyprus ("Cyprus"), with its principal place of business in Limassol, Cyprus.

41. Upon information and belief, third-party respondent IBCS Trading and Distribution Co. Ltd. is a corporation or other legal entity organized and existing under the laws of Sharjah, in the UAE, with its principal place of business in Sharjah.

42. Upon information and belief, third-party respondent PUIG Middle East FZCO is a corporation or other legal entity organized and existing under the laws of Dubai, in the UAE, with its principal place of business in Dubai.

43. Upon information and belief, third-party respondent Arab Union Reinsurance Company is a corporation or legal entity organized and existing under the laws of Syria, with its principal place of business in Damascus, Syria.

44. Upon information and belief, third-party respondent Suez Canal Insurance Company is a corporation or other legal entity organized and existing under the laws of the Arab Republic of Egypt ("Egypt"), with its principal place of business in Giza, Egypt.

45. Upon information and belief, third-party respondent Suez Canal Bank is a bank organized and existing under the laws of Egypt, with its principal place of business in Cairo, Egypt.

46. Upon information and belief, third-party respondent Byblos Bank S.A.L is a bank organized and existing under the laws of Lebanon, with its principal place of business in Beirut, Lebanon.

47. Upon information and belief, third-party respondent Union Bank of India is a bank organized and existing under the laws of the Republic of India ("India"), with its principal place of business in Mumbai, India.

48. Upon information and belief, third-party respondent J.B. Boda Reinsurance Brokers Pvt. Ltd. is a corporation or other legal entity organized and existing under the laws of India, with its principal place of business in Mumbai, India.

49. Upon information and belief, third-party respondent Syrian Arab Airlines is a corporation or other legal entity organized and existing under the laws of Syria, with its principal place of business in Damascus, Syria.

50. Upon information and belief, third-party respondent British Arab Commercial Bank PLC is a bank organized and existing under the laws of England, with its principal place of business in London, England.

51. Upon information and belief, third-party respondent Bank of Ireland is a bank organized and existing under the laws of the Republic of Ireland ("Ireland"), with its principal place of business in Dublin, Ireland.

52. Upon information and belief, third-party respondent Shannonside Aviation Services Ltd. is a corporation or other legal entity organized and existing under the laws of Ireland, with its principal place of business in Dunboyne, Ireland.

## FACTS COMMON TO ALL COUNTERCLAIMS AND THIRD-PARTY CLAIMS

A. <u>Petitioners' Claims to the Blocked Assets</u>

53. Upon information and belief, on March 31, 2011, Petitioners recovered the Judgment, in the amount of $601,969,151.50, against the Judgment Debtors (Syria, Syrian Air Force Intelligence and General Muhammed Al-Khuli) in an action in the United States District Court for the District of Columbia entitled <u>Patrick Scott Baker, et al. v. Syrian Arab Republic, et al.</u>, Case No. 03-cv-00749. The Judgment was entered under the "terrorism exception," 28

U.S.C. § 1605A, of the FSIA. As of the time of this third-party petition, the Judgment Debtors have not voluntarily paid the Judgment.

54. On December 19, 2011, Petitioners registered the Judgment in the Southern District of New York. Baker, et al. v. Great Socialist People's Libyan Arab Jamahiriya, No. 11-mc-00434 (S.D.N.Y.). Petitioners shortly thereafter moved for an order under § 1610(c) of the FSIA authorizing them to enforce the Judgment in this judicial district. That motion was granted.

55. On January 17, 2012, the United States Marshal effected service of a writ of execution on BNY Mellon in connection with the Judgment.

56. On or about October 15, 2012, Petitioners filed their turnover Petition pursuant to Fed. R. Civ. P. 69 and CPLR §§ 5225(b) and 5227. Their Petition, as amended on January 11, 2013, seeks an order directing BNY Mellon and various other respondent banks to turn over to Petitioners, in partial satisfaction of the Judgment, certain funds held by the respondent banks, including the Blocked Assets. The Blocked Assets, and upon information and belief the blocked funds held by other respondent banks, are being held in blocked accounts as required by OFAC Regulations set forth in 31 C.F.R. Part 542 or by applicable Presidential Executive Orders.

B. The Gates' Possible Claim to the Blocked Assets

57. In an action in the United States District Court for the District of Columbia entitled Francis Gates et al. v. Syrian Arab Republic et al, No. CA 06-1500 (RMC) (D.D.C.), the Gates obtained a judgment against Syria in the amount of $412,909,587. In December 2011, the Gates commenced an action in the United States District Court for the Northern District of Illinois, entitled Gates et al. v. Syrian Arab Republic et al., Case No. 11-cv-08715, in which they have sought to recover on the Judgment.

58. Upon information and belief, in or around December 2011, the Gates delivered a writ of execution to the SDNY Marshal, which referred to their judgment against Syria, for service on BNY Mellon and one or more other banks. A copy of that writ of execution appears to have been delivered to BNY Mellon at or around that same time. Upon information and belief, however, the Gates' writ of execution has since expired and has not been renewed, and any conceivable rights the Gates may have to the Blocked Assets are subordinate to those of the Bakers.

59. Nonetheless, as of the time of this third-party petition, the Gates, acting through their counsel, have declined to commit one way or the other as to whether they have or will assert a valid claim to the Blocked Assets that may be superior to those of the Bakers or anyone else. BNY Mellon is accordingly naming the Gates as third-party respondents, out of caution, to avoid the risk that the Gates would make a future claim to the Blocked Assets after those assets will have been turned over to the Bakers or someone else.

C. The Wire Transfer Respondents'
   <u>Possible Claims to the Blocked Assets</u>

60. With one exception, the third-party respondents other than the Gates (collectively referred to above and hereafter as the "Wire Transfer Respondents") are persons or entities who were identified as originators, beneficiaries, intermediary banks or other participating banks in the wire instructions received by BNY Mellon as to the blocked wire transfers whose proceeds make up the Blocked Assets. The one exception is Syriatel, which is named as a third-party respondent, even though it was not a party to any of the blocked wire transfers at issue, because certain of those wire transfers were for the payment of Syriatel dividends, and the involvement of Syriatel appears to have been what triggered the blocking of those transfers under Syrian sanctions regulations.

61. Upon information and belief, those of the Wire Transfer Respondents that, as to any one blocked wire transfer, were either the originator, the originator's bank, or an intermediary bank that preceded BNY Mellon in the wire transfer chain may have an interest in or rights to some or all of the Blocked Assets that are superior to those of Petitioners or of the Gates. BNY Mellon believes that those of the Wire Transfer Respondents that were a beneficiary, beneficiary's bank, or intermediary bank that followed BNY Mellon in a given wire transfer chain have no right at all to the Blocked Assets, whether it be superior or subordinate to the rights of any other party. But it is nonetheless including them as Wire Transfer Respondents to protect against any claim, however deficient, that any one or more of them could in the future assert as to one or more of the Blocked Assets.

62. Upon information and belief, some of the Wire Transfer Respondents may have a sufficient interest in the Blocked Assets such that they may be able to establish that those assets are not subject to execution to satisfy the judgments or claims of the Bakers or the Gates.

63. Due to the present uncertainty as to the actual or prospective interests in the Blocked Assets that may be asserted by Petitioners and the third-party respondents, BNY Mellon is faced with the prospect of multiple claims to some or all of the Blocked Assets. Under these circumstances, BNY Mellon has legitimate concerns that it may be exposed to double or multiple liability, vexatious and burdensome litigation in different courts and proceedings, and the attendant risk of inconsistent rulings.

FIRST COUNTERCLAIM AND<br>
<u>FIRST THIRD-PARTY CLAIM FOR RELIEF</u>

64. BNY Mellon repeats and realleges the allegations in paragraphs 1 through 63 above as if they were set forth here in full.

65. CPLR § 5239 provides that "[p]rior to the application of property or debt . . . to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in [such] property or debt," and that in such a proceeding the Court "may vacate the execution or order, void the levy [or] direct the disposition of the property or debt."

66. BNY Mellon is accordingly entitled to an order determining the rights of Petitioners, the Gates, and the Wire Transfer Respondents to the Blocked Assets.

## SECOND COUNTERCLAIM AND SECOND THIRD-PARTY CLAIM FOR RELIEF

67. BNY Mellon repeats and realleges the allegations in paragraphs 1 through 66 above as if they were set forth here in full.

68. Although Petitioners assert that they are entitled to the turnover of the Blocked Assets to satisfy their judgment against the Judgment Debtors, other persons or entities may have claims to or rights in some or all of the Blocked Accounts that may take priority over those of Petitioners. As a result, BNY Mellon is exposed to the risk of multiple and inconsistent liability as to the Blocked Assets.

69. BNY Mellon is accordingly entitled to interplead all other parties who may have claims to or rights in the Blocked Assets and obtain a determination by the Court, pursuant to Fed. R. Civ. P. 22, 28 U.S.C. §§ 1335 and 2361, New York Banking Law § 134 and CPLR § 1006, of the rights of all interested parties with respect to those assets.

## THIRD COUNTERCLAIM AND THIRD THIRD-PARTY CLAIM FOR RELIEF

70. BNY Mellon repeats and realleges the allegations in paragraphs 1 through 69 above as if they were set forth here in full.

71. If and when the Court directs it to turn over, to Petitioners or anyone else, some or all of the Blocked Assets, BNY Mellon will be entitled to a discharge protecting it against any future claim, by any person or entity, to the Blocked Assets that will have been turned over.

72. BNY Mellon is also entitled to preliminary and permanent injunctive relief (i) restraining and enjoining Petitioners, the Gates, the Wire Transfer Respondents, and all other persons and entities from instituting or prosecuting any other proceeding, in any state or federal court or any other jurisdiction or forum, that relates to or affects the Blocked Assets; (ii) requiring all of those persons and entities to assert their claims to the Blocked Assets in this proceeding; and (iii) restraining and enjoining them from instituting or prosecuting any proceeding, in any jurisdiction, as to any of the Blocked Assets that BNY Mellon is ordered to turn over to Petitioners or to any other judgment creditor of the Judgment Debtors.

### FOURTH COUNTERCLAIM AND FOURTH THIRD-PARTY CLAIM FOR RELIEF

73. BNY Mellon repeats and realleges the allegations in paragraphs 1 through 72 above as if they were set forth here in full.

74. BNY Mellon is entitled to a judgment awarding it its costs and reasonable attorneys' fees incurred in defending against Petitioners' judgment enforcement efforts, including its commencement and prosecution of this third-party proceeding. Any such costs and attorneys' fees are to be awarded out of the funds in the Blocked Assets that may be turned over, to Petitioners or anyone else, under any judgment entered in this action.

WHEREFORE BNY Mellon requests the entry of a judgment as follows:

a. Dismissing the Petition in its entirety as against BNY Mellon;

b. Determining the rights, if any, of Petitioners, the Gates, the Wire Transfer Respondents, and any other interested parties to the Blocked Assets;

c.  Determining whether any of the Wire Transfer Respondents are an agency or instrumentality of Syria;

d.  As to each of the Blocked Assets, determining whether the Bakers or the Gates have met their burden of proof with respect to the other requirements and conditions set forth in TRIA § 201 or FSIA § 1610(g) for execution against such assets;

e.  Determining that service of this third-party petition, the third-party summons, and other relevant documents upon the third-party respondents constitutes good and sufficient service under CPLR § 5239 and any other applicable provision of law;

f.  Determining that this Court has subject matter jurisdiction, personal jurisdiction and in rem jurisdiction over the third-party respondents and the Blocked Assets to the extent necessary to determine the parties' respective rights with respect to those assets;

g.  Determining whether BNY Mellon is a proper garnishee and has properly been subjected to execution of any judgment against the Judgment Debtors in favor of the Bakers or the Gates with respect to any of the Blocked Assets;

h.  Determining the extent to which, if at all, each of the Blocked Assets is subject to execution to satisfy the Judgment or the Gates' judgment against Syria, and the extent to which, if at all, the Bakers, the Gates, or any other persons or entities are entitled to the turnover of some or more of those assets;

i.  Discharging BNY Mellon from any and all liability to the Bakers, the Gates, the Wire Transfer Respondents and any other persons and entities with respect to any portion of the Blocked Assets that is ordered to be turned over to any of one or more of those parties;

j.  Permanently restraining and enjoining the Bakers, the Gates, the Wire Transfer Respondents, and all other persons and entities from instituting or prosecuting any proceeding, in

any jurisdiction, as to any Blocked Assets that BNY Mellon is ordered to turn over to any parties;

  k. Awarding BNY Mellon its costs and expenses, including reasonable attorneys' fees, incurred in connection with this third-party proceeding; and

  .l. Awarding BNY Mellon such other and further relief as may be just and proper.

Dated: New York, New York
    March 21, 2014

         LEVI LUBARSKY & FEIGENBAUM LLP

         By: _____
           Steven B. Feigenbaum
           Gregory P. Feit
         1185 Avenue of the Americas, 17th Floor
         New York, NY 10036
         (212) 308-6100
         *Attorneys for Respondent/Third-Party Petitioner*
         *The Bank of New York Mellon*