# EXHIBIT C



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
PATRICK SCOTT BAKER, et al.

        Petitioners,

-versus-

NATIONAL BANK OF EGYPT; JPMORGAN
CHASE & CO.; JPMORGAN CHASE BANK,
N.A. CITIBANK, N.A.; THE BANK OF NEW
YORK MELLON; INTESA SANPAOLO SPA;
and COMMERZBANK AG,

        Respondents.
---------------------------------------- X

No. 12-cv-7698 (GBD)

**ORDER SETTING FORTH
PROCEDURES FOR
INTERPLEADER ACTIONS
AND TURNOVER MOTIONS**

        This Order, applicable to the Baker Petitioners and respondents JPMorgan Chase & Co. ("JPMC"), JPMorgan Chase Bank, N.A. ("JPMCB"), The Bank of New York Mellon ("BNY Mellon"), Citibank N.A. ("Citibank") and Intesa SanPaolo S.p.A. ("Intesa") (collectively, the "Banks"), establishes the procedures for the Banks' initiation of interpleader proceedings and service of interpleader petitions, and the Baker Petitioners' filing of turnover motions.

        WHEREAS:

        1.      On March 31, 2011, the Baker Petitioners recovered a judgment in the amount of $601,969,151.50 (the "Judgment") against the Syrian Arab Republic ("Syria"), Syrian Air Force Intelligence, and General Muhammed Al-Khuli in an action filed in the United States District Court for the District of Columbia entitled <u>Patrick Scott Baker, et al. v. Syrian Arab Republic, et al.</u>, Case No. 03-cv-00749. The Judgment was entered under the "terrorism exception," 28 U.S.C. § 1605A, of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602 et seq. (the "FSIA"). To date, the Syrian judgment debtors have not voluntarily paid the Judgment.

2. On September 1, 2011, the United States District Court for the District of Columbia determined that a "reasonable period of time" had passed since Syria received notice of the Judgment and entered an Order under 28 U.S.C. § 1610(c) authorizing the Baker Petitioners to enforce the Judgment as against Syria.

3. On December 19, 2011, the Baker Petitioners registered the Judgment in the Southern District of New York. *Baker, et al. v. Great Socialist People's Libyan Arab Jamahiriya*, No. 11-mc-00434 (S.D.N.Y.) (Docket No. 1). Soon thereafter, and because Syria is a foreign sovereign, the Baker Petitioners moved for an order under § 1610(c) of the FSIA (Docket No. 3) authorizing them to enforce the Judgment against Syria in this judicial district. That motion was granted (Docket No. 2).

4. The United States Marshal effected service of a writ of execution on BNY Mellon on January 17, 2012 in connection with the Judgment.

5. BNY Mellon responded to the writ of execution on or about March 14, 2012, noting that it was "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"

6. The Baker Petitioners subsequently served an information subpoena on BNY Mellon in an effort to learn what types of assets it held in the name of, or for the benefit of, Syria or any of its agencies or instrumentalities.

2

7. BNY Mellon responded to the Baker Petitioners' information subpoena by saying that it was holding " ███████████████████████████████████████ ███████████████████████████████████ " and that " ████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████ " Specifically, BNY Mellon stated that it was then holding accounts blocked due to the involvement of the following persons and entities: ██████████████████████████ ████████████████████████████████████████████ ██████, and ████████. Of those blocked accounts, 18 of them remain blocked today and meet the $5,000 minimum threshold, for inclusion in these interpleader and turnover proceedings, to which the Baker Petitioners and the Banks have agreed. Those 18 blocked accounts, referred to collectively as the "BNY Mellon Assets," are subjects of this Order and are set forth in the annexed Exhibit A.

8. The United States Marshal effected service of a writ of execution on JPMC on February 23, 2012, and on JPMCB on November 9, 2012, in connection with the Judgment.

9. On or about March 6, 2012, JPMCB responded to the writ of execution served on JPMC by stating that JPMCB held what may be assets of the Syrian Judgment Debtors "█ ████████████████████████████████████████████████████ ████████████████████████████████ " On November 30, 2012, JPMCB responded in the same manner to the writ served on it.

10. The Baker Petitioners subsequently served information subpoenas on JPMC and JPMCB in an effort to learn what types of assets JPMC and JPMCB held in the name of, or for the benefit of, Syria or any of its agencies or instrumentalities.

3

11. JPMCB responded to the Baker Petitioners' information subpoena by stating that it was " ███████████████████████████████████████ ███████ " and that they had " ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████ "

12. JPMCB advised that it believed that " ███████████████████████

██████████████████████████ " Of those twelve blocked accounts, two are not subjects of this Order; four are below the $5,000 minimum threshold to which the Baker Petitioners and the Banks have agreed; and one has since been unblocked pursuant to an OFAC license. The other five blocked accounts, along with another blocked account disclosed to the Baker Petitioners after JPMCB's original disclosure of blocked accounts, are subjects of this Order and are referred to as the "JPMCB Assets." The JPMCB Assets are set forth in the annexed Exhibit B.

13. The United States Marshal effected service of a writ of execution on Citibank on or about January 27, 2012.

14. On or about March 13, 2012, Citibank responded to the writ of execution served on it by stating that the assets in question " ██████████████████████████████

███████████████████████████████████████████████████████

██████████████ "

15. The Baker Petitioners subsequently served an information subpoena on Citibank in an effort to learn what types of assets Citibank held in the name of, or for the benefit of, Syria or any of its agencies or instrumentalities.

4

16. On or about June 8, 2012, Citibank responded to the Baker Petitioners' information subpoena by stating that it was holding assets in the form of five blocked wire transfers and one blocked account. On February 28, 2013, counsel for Citibank informed counsel for the Baker Petitioners that Citibank's June 8, 2012 response mistakenly listed a blocked wire transfer as a blocked account.

17. One of the six wire transfers originally blocked by Citibank is now the subject of an OFAC license. On February 10, 2014, Citibank and the Baker Petitioners filed a joint stipulation of dismissal with prejudice as to the assets subject to the license, and that wire transfer is not a subject of this Order. Of the remaining five blocked wire transfers, four of them remain blocked today and meet the $5,000 minimum threshold, for inclusion in these interpleader and turnover proceedings, to which the Baker Petitioners and the Banks have agreed. Those four blocked wire transfers, which are subjects of this Order and which are referred to as the "Citibank Assets," are set forth in the annexed Exhibit C.

18. The United States Marshal effected service of a writ of execution on Intesa on or about January 31, 2012 in connection with the Judgment.

19. Intesa responded to the writ of execution on April 5, 2012, noting that it held the proceeds of certain blocked wire transfers that had been blocked pursuant to the Syrian Sanctions Regulations.

20. The Baker Petitioners subsequently served an information subpoena on Intesa on or about April 27, 2012 in an effort to learn what assets, if any, Intesa held in the name of, or for the benefit of, Syria, Syrian Air Force and General Muhammed al-Khuli, as well as information on any assets blocked pursuant to Presidential Executive Orders regarding Syria or Syrian Sanctions Regulations.

21.     Intesa responded to the Baker Petitioners' information subpoena on May 21, 2012 by indicating that it held one blocked wire transfer in which Syria may have an indirect interest. In addition, Intesa identified three blocked wire transfers that were blocked pursuant to Syrian Sanctions Regulations, which included two wire transfers blocked due to the involvement of ▮▮▮▮▮▮▮▮ and one wire transfer blocked due to the involvement of ▮▮▮▮▮▮▮▮. A schedule that reflects the essential information concerning three of these blocked wire transfers, referred to collectively as the "Intesa Assets," is set forth in the annexed Exhibit D.

22.     The Baker Petitioners commenced this action seeking the turnover of the BNY Mellon Assets, the JPMCB Assets, the Citibank Assets and the Intesa Assets (collectively, the "Blocked Assets") under § 201(a) of the Terrorism Relief Insurance Act of 2002 ("TRIA") or under § 1610(g) of the FSIA.

23.     The Banks wish to give notice to the parties to the blocked wire transfers underlying the Blocked Assets by filing against those parties formal interpleader actions as to their respective blocked accounts that make up part of the Blocked Assets. The Banks and the Baker Petitioners have agreed to establish the procedures set forth below for service on those parties. The Court finds that these procedures are consistent with due process and with the rights of those claiming an interest in the Blocked Assets, thereby enabling the Banks to obtain a future discharge binding on all persons and entities.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.     The Banks shall commence their respective interpleader actions, by filing an interpleader petition with the Court, within seven days from the entry of this Order.

6

2. The Banks shall initiate service on third-party respondents to the interpleader petitions immediately after the filing of the interpleader petitions, and no later than 21 days after the filing of such petitions.

3. Service of any interpleader petitions shall be accomplished as follows:

   a. The summons and interpleader petition shall be served on the interpleader respondents using any method provided by Rule 4(f) and/or Rule 4(h)(2) of the Federal Rules of Civil Procedure, and/or § 1608(b)(3) of the FSIA.

   b. To the extent the summons, interpleader petition and any ancillary documents are being served on an entity alleged to be an agency or instrumentality of Syria, whether located in Syria or elsewhere, the summons and interpleader petition, as well as the Baker Petitioners' First Amended Turnover Petition dated January 10, 2013 (the "Bakers' Amended Petition"), shall be translated into Arabic and otherwise served in compliance with § 1608(b)(3) of the FSIA.

   c. To the extent service of the summons and interpleader petition (as well as any ancillary documents and the Bakers' Amended Petition) on any party or parties has not been completed within four months after the initiation of service under ¶3(a), service shall be accomplished promptly by any one of the following alternative means:

      (i) By sending an e-mail to such entity or person that states:

      "IMPORTANT! This e-mail is being sent to put you on notice of a lawsuit pending in the United States District Court for the Southern District of New York that could result in the seizure and forfeiture of funds in which you may have an interest. These funds include the balances held in one or more blocked accounts that may include the proceeds of one or more electronic funds transfers that were interrupted and blocked pursuant to the Trading with the Enemy Act, 50 U.S.C. App. § 5, and the Syrian Sanctions Regulations, codified at 31 C.F.R. Part 542. Please open the attachments, which are in pdf form, immediately. They will provide more detailed information about the lawsuit and your potential exposure to loss in that lawsuit."

      to the last known e-mail address of such entity or person, as determined by the Bank giving the notice from its own records or from public sources such as the internet, and attaching pdf versions of the service documents to the e-mail; if the e-mail is being sent to a business entity, it should be directed to the e-mail address of the

7

       Chief Executive Officer, Managing Director or Chief Legal Officer, if known, or it should state, following the word "IMPORTANT," "Deliver this e-mail and the attachments to your Chief Executive Officer, Managing Director or Chief Legal Officer at once"; or

  (ii) By faxing copies of the service documents to such entity at its last known fax number, as determined by the Bank giving the notice from its own records or from public sources such as the internet; if the fax is being sent to a business entity, the fax cover sheet should be addressed to the Chief Executive Officer, Managing Director or Chief Legal Officer of the entity; or

  (iii) By sending copies of the service documents to such entity or person at its last known address, as determined by the Bank giving the notice from its own records or from public sources such as the internet, either by U.S. International Express Mail or U.S. Global Priority Mail, or by an express delivery company such as FedEx, UPS or DHL that makes deliveries in the country to which the documents are being sent and will provide proof of delivery; if the service documents are being sent to a business entity, they should be directed to the attention of the Managing Director, Chief Executive Officer or Chief Legal Officer of that entity.

 d. If service of an interpleader petition has not been completed within 12 months of initiation of service, the Baker Petitioners may move for a default judgment as to any third-party respondent as to which service has not been completed.

4. In serving any third-party interpleader respondent, the Bank effecting service shall deliver each document being served in an unredacted form insofar as the document relates to that particular respondent. Documents being served, including the interpleader petition, may otherwise be redacted so that the person or entity being served sees only those portions of the document that relate to Blocked Assets that are held in that person's or entity's name, that may have involved that person or entity, or that otherwise may relate or refer to that person or entity.

5. The protective orders in place in this proceeding are hereby modified and amended to the extent necessary for the translation of documents into Arabic or any other

8

language, as well as the service of documents and information as authorized in this Order.[1] Nothing in those protective orders shall prevent any Bank from serving its summons, interpleader petition, ancillary documents and the Bakers' Amended Petition on any interpleader respondent in unredacted form, or from otherwise providing such person or entity with information that is material, relevant or of interest to them in connection with the Bank's interpleader proceeding.

6. Each Bank shall file declarations of service promptly after the completion of service on all respondents in that Bank's interpleader proceeding.

7. Service in accordance with the provisions of this Order shall be deemed to satisfy all of the requirements for service under the FSIA, the Federal Rules of Civil Procedure, the New York Civil Practice Law and Rules, and due process of law.

8. Following the passage of 60 days after service has been completed as to any one interpleader respondent, and in the event that respondent has not appeared or has not answered or otherwise responded to the interpleader petition, the Baker Petitioners and the Bank in question shall promptly stipulate that a default judgment may be entered against that respondent. If and when a default judgment has been entered against all respondents with a possible claim to or interest in a particular Blocked Asset, the Baker Petitioners shall then have the right to move for a turnover of that Blocked Asset.

9. To the extent any interpleader respondent does answer or otherwise respond to an interpleader petition, the interpleader proceeding as to that respondent, including any turnover

---

[1] The protective orders include the Confidentiality Stipulation and Order, filed June 13, 2012 in Case No. 11-mc-00434, among the Baker Petitioners, BNY Mellon and JPMCB; and the Protective Order, originally entered in Case No. 03-749 (D.D.C.) and extended to this action by Order dated October 15, 2012 (ECF No. 3), pursuant to which Intesa responded to the Baker Petitioners' information subpoena.

motion the Baker Petitioners may make as to the Blocked Asset claimed by the interpleader respondent, shall continue to its conclusion.

10. The Baker Petitioners agree to stay execution on any turnover order or judgment entered in their favor until 21 days after the United States Court of Appeals for the Second Circuit has ruled in the consolidated appeals in *Hausler v. JPMorgan Chase Bank, N.A.* (Case No. 12-1386) and *Calderon-Cardona v. JPMorgan Chase Bank, N.A.* (Case No. 12-75). During that 21-day period, the Banks shall have the right to apply to the Court for relief from the turnover order or judgment if such relief is mandated or warranted by the Second Circuit's ruling.

11. In the event the Baker Petitioners are awarded the turnover of any Blocked Assets under § 201(a) of TRIA or § 1610(g) of the FSIA, each Bank that has complied with the interpleader requirements set forth in this Order shall be entitled to a discharge, under Rule 54(b) of the Federal Rules of Civil Procedure, from any further liability as to the full amount of the Blocked Asset that is a subject of the turnover judgment that includes the discharge.

12. At such time as the Baker Petitioners are awarded the turnover of any Blocked Assets under § 201(a) of TRIA or § 1610(g) of the FSIA, the Banks and the Baker Petitioners will attempt to reach an agreement on the amount of the Banks' reasonable attorneys' fees and expenses, including service and translation expenses, to be reimbursed to the Banks. To the extent the Banks and the Baker Petitioners reach an agreement on the amount of the Banks' reasonable attorneys' fees and expenses, the Court shall make an award to the Banks, in the turnover judgment, of the agreed-upon fees and expenses out of the Blocked Assets being turned over. If no agreement is reached with any one or more Banks, then each such Bank shall be entitled to apply for an award of its reasonable attorneys' fees and expenses incurred in

complying with this Order, and the Baker Petitioners reserve the right to object to any such application. In that event, the aggregate amount claimed in the Banks' fee applications shall be deducted from the aggregate Blocked Assets being turned over and shall be held in an attorney's escrow account, opened in the name of the Baker Petitioners' counsel, until after rulings on the fee applications have been issued. At that point, the escrowed funds shall be distributed – to the Banks, to the United States Marshal for further distribution to the Baker Petitioners, to the Baker Petitioners directly, or to multiple parties – in accordance with the terms of the order embodying the Court's ruling.

Dated: New York, New York
       March 5, 2014

MAR 06 2014

SO ORDERED:

_George B. Daniels_
George B. Daniels
United States District Judge

11

# Exhibit A

EXHIBIT A
ORDER SETTING FORTH PROCEDURES FOR INTERPLEADER ACTIONS AND TURNOVER MOTIONS

| DATE BLOCKED | ORIGINAL AMOUNT BLOCKED | ORIGINATOR | ORIGINATING BANK | INTERMEDIARY BANK | ADDITIONAL INTERMEDIARY BANK | BENEFICIARY BANK | BENEFICIARY |
|---|---|---|---|---|---|---|---|
| REDACTED | | | | | | | |

| DATE BLOCKED | ORIGINAL AMOUNT BLOCKED | ORIGINATOR | ORIGINATING BANK | INTERMEDIARY BANK | ADDITIONAL INTERMEDIARY BANK | BENEFICIARY BANK | BENEFICIARY |
|---|---|---|---|---|---|---|---|
| REDACTED | | | | | | | |

# Exhibit B

EXHIBIT B
ORDER SETTING FORTH PROCEDURES FOR INTERPLEADER ACTIONS AND TURNOVER MOTIONS

| DATE BLOCKED | ORIGINAL AMOUNT BLOCKED | ORIGINATOR | ORIGINATING BANK | INTERMEDIARY BANK | BENEFICIARY BANK | BENEFICIARY |
|---|---|---|---|---|---|---|
| | | | REDACTED | | | |

# Exhibit C
# (Filed Under Seal)

# Exhibit D
# (Filed Under Seal)